[No. 2955.]

ABE WOODY *v.* THE STATE.

1. LIBEL – INFORMATION.—See the statement of the case for a newspaper article made the subject matter of a prosecution for libel, and *held* libelous *per se;* and for an information *held* sufficient to charge the circulation of a libel with intent to injure the reputation of the person libelled.

2. SAME—EVIDENCE—FACT CASE.—See evidence *held* sufficient to support a conviction for circulating a libel.

APPEAL from the County Court of Tarrant. Tried below before the Hon. R. E. Beckham, County Judge.

The conviction was for the malicious circulation of a libel, and the penalty imposed was a fine of two hundred and fifty dollars.

The charging part of the information is as follows:  "That one Abe Woody, in the county of Tarrant and State aforesaid, heretofore, on the fifth day of October, in the year of our Lord 1882, then and there being a person of an evil, wicked and malicious mind and disposition, and unlawfully, wickedly and maliciously devising, contriving and intending, as much as in him lay, to scandalize, villify and defame one George S. Burchill, and to bring him into public scandal, infamy and disgrace, and to injure, prejudice and disgrace and aggrieve him, the said George S. Burchill, then and there of his, the said Abe Woody's, malice, hatred and ill will towards said George S. Burchill, unlawfully, wilfully and maliciously, and with intent to injure him, said George S. Burchill, and with intent then and there to injure the reputation of said George S. Burchill, then and there did maliciously circulate and distribute in a certain newspaper entitled 'The Grand Army Journal,' certain false, scandalous and defamatory and malicious statements of and concerning said George S. Burchill, and then and there affecting the reputation of said George S. Burchill, conveying that said George S. Burchill had been guilty of the penal offense of theft and robbery, and that he, the said George S. Burchill, had been guilty of acts disgraceful to him as a member of society, the natural consequences of which being to bring him into contempt among all honorable persons; said Abe Woody then and there well knowing the contents of said libel so circulated and distributed by him as aforesaid, which said false, malicious, defamatory libel is in words and figures as follows, that is to say:

"' Texas, ex-Governor Davis, and his pliant Burch, the indicted mail thief, who ought to have been sent to the penitentiary, but who escaped by victimizing his unsophisticated youthful fellow clerk.  The scoundrel now in this city brazenly seeking to retain his wife in a Federal office in Texas, by defaming the character of certain Republican gentlemen of the highest standing and reputation.  There is in this city (meaning the city of Washington, in the District of Columbia), from Fort Worth, Texas (meaning the city of Fort Worth, in the State of Texas), an individual (meaning the said George S. Burchill), who, although he claims to have served in the army of the Union, is nevertheless a disgrace to any decent community (meaning that said George S. Burchill is a disgrace to any decent community), and whose brazen impudence is equalled only by the infamy of his unpunished mail thefts while serving Uncle Sam in the capacity of clerk in a

Texas post office. (Meaning thereby that said George S. Burchill had been guilty of theft from the United States mails.) We write this notice of the fellow (meaning said George S. Burchill) with a view to enlightening First Assistant P. M. General Hon. Frank Hatton (meaning the First Assistant Postmaster General of the United States), and the departments generally, upon the true status of this penitentiary-deserving mail robber of registered money packages. (Meaning thereby that said George S. Burchill had been guilty of the penal offense of robbing the United States mails of registered money packages, and that he deserved to be sent to the penitentiary therefor.) We are prompted by no animus in this matter other than a laudable desire to protect respectable and honorable persons from the base malignings of this indicted thief (meaning that said George S. Burchill had been guilty of the penal offense of theft), and to aid in his ejectment from the Federal service. Since his advent in our city (meaning said city of Washington), he has been denouncing this journal as the hireling of certain gentlemen to fight that great political fraud, E. J. Davis, of Texas, and also falsely charging upon a certain well known and highly reputable old time stalwart member of the Republican party of that State, the authorship of our leading editorial of the sixteenth instant. Every word of the editorial referred to was written by the editor and publisher of this journal, A. T. Bissell, and the facts expressed therein were taken from the stores of his own personal knowledge, as a resident Republican citizen of Texas during the periods therein named. The editorial discussed facts which are notorious and of record, and it is therefore not at all improbable or unlikely that it resembles editorials of other newspapers that may have been written upon the same unsavory subject. He (meaning the said George S. Burchill), the mail thief, (meaning that the said George S. Burchill had been guilty of the penal offense of stealing from the United States mails), makes this charge, hoping thereby to fortify and render successful his brazen scheme to defeat the expressed wishes not only of the great majority of the Republicans of Northwest Texas, but also many of the substantial business men of Fort Worth, who are Democrats, and who have anxiously joined in the efforts to remove this scoundrel (meaning said George S. Burchill) from a Federal position wherein he has already robbed them (meaning thereby that said George S. Burchill had been guilty of the penal offense of robbery), and in his infamy by cajoling and pernicious

influences escaped the penitentiary by inducing his unfortunate fellow clerk, a mere boy, of highly respectable family, to assume the guilt of the whole robbery. But for the court record of this villainous case here referred to, we have merely to cite to the criminal docket of the United States Court for the Northern District of Texas.'

"To the great damage, disgrace, scandal and infamy of him, said George S. Burchill, and against the peace and dignity of the State."

H. P. Shields was the first witness sworn for the State. He stated that he knew both the defendant and George S. Burchill, the prosecuting witness, and he knew them during the year 1882. Burchill was then, and is now, a clerk in the post office at Fort Worth. His wife, Belle M. Burchill, is now post mistress at Fort Worth, and was such post mistress in 1882, having succeeded J. P. Alexander in that position. Burchill was a post office clerk under Alexander while Alexander was post master. During Alexander's administration of the office, registered money packages were lost or stolen from the office, and George S. Burchill and one William Clegg, a nephew of post master Alexander, were arrested and charged with the theft. Clegg confessed that he perpetrated the robberies, and exonerated Burchill. Burchill is a Republican.

The paper containing the alleged libel was here exhibited to the witness. The paper was entitled "The Grand Army Journal," and purported to be published at Washington, D. C. Witness recognized the article alleged to be libelous. He first saw the said article in the year 1882, before the filing of the information in this case. Witness was walking up Main street, in the city of Fort Worth, and when near his place of business saw the defendant sitting on a beer keg reading a letter. As the witness started into his place of business, the defendant took a paper from his side pocket, unfolded it, and said: "Here is a bad piece on Burchill." The newspaper was the "Grand Army Journal," and the article to which witness's attention was called was the same contained in the paper now in evidence. Witness and defendant stepped back into the beer room, where they were joined by Colonel Morten, and one Dotson, colored. Some discussion of the article followed, witness defending Burchill and defendant talking against him. Witness did not remember the words used by defendant. Witness remarked that the matter had already been settled, and Burchill discharged, and that he thought it im-

proper and not right to be recalling such charges against Burchill. Defendant replied that Burchill could be arrested again. Burchill and defendant were not on good terms. This all occurred in Fort Worth, Texas. The defendant was then, and still is, a deputy United States marshal.

Parson Dotson testified, for the State, substantially as Shields did. He stated that defendant was sitting on a beer keg reading the newspaper as he, witness, and Shields walked up, and, pointing the article out to Shields, remarked: "Here is a h—l of an article on Burchill."

Lon Stien, being shown the article, testified, for the State, that he had seen it before. Witness, on one occasion, was standing in his place of business, and saw the defendant and some man he did not know standing in the door, reading an article in a newspaper which seemed to reflect severely on Burchill. Witness asked to see the article, and defendant handed him the paper. The paper was the "Grand Army Journal." The witness read the article, which was the same as that in evidence.

George S. Burchill testified, for the State, that the post mistress, Belle M. Burchill, was his wife. Witness and defendant fell out about some mail robberies done three years before this trial, and were not on good terms.

George Davenport testified, for the State, that he saw the alleged libelous article before the information against the defendant was filed. Witness was at the Union depot in Fort Worth one evening, just after the train arrived. Defendant passed him with a roll of newspapers. Witness asked him for a paper, and defendant handed him one, saying something about it containing an article on Burchill. Witness opened the paper, and saw the article on which this prosecution is based. Witness did not know that any body on the train threw the paper to defendant. Witness had heard many persons discuss the article. At this point the State closed.

Colonel Morten was the first witness for the defense. He testified that, previous to and at the time of the arrest of the defendant, he, witness, was the editor of a Republican newspaper in the city of Fort Worth. Several copies of the "Grand Army Journal" came to the witness's office, some of which contained the alleged libelous article. As well as the witness could remember, a series of articles on the same subject were published. Defendant was in Fort Worth at the time. Witness heard a great deal of talk about the article at the time it appeared, but

the paper containing it was not shown to the witness by the defendant. The paper was received through the mail by a great many parties. The several copies of "The Grand Army Journal" received by the witness were received at different times, as weekly exchanges. Witness did not know that more than one issue contained the libelous article in question.

R. W. McPhail testified, for the defense, that, prior to this information, he worked on Morten's Republican paper in Fort Worth. The first time he saw "The Grand Army Journal," containing the alleged libelous article, was some time before the information was filed. Several copies of that paper came to Morten's office from Washington, and were left on the table in Mr. Morten's office. Several articles were published in that paper, "The Grand Army Journal," relating to the arrest of Burchill and Clegg for robbing the mail, and Clegg's confession. Several copies of the paper containing the article were received in Fort Worth by mail, and occasioned much talk. Witness understood that Clegg confessed to the robberies for which he and Burchill were arrested, pleaded guilty, and was sentenced to the penitentiary for two years, but that he subsequently made another confession, or statement, implicating Burchill.

L. H. Hill, for the defense, testified, in substance, that he saw the article in question before the arrest of the defendant. Defendant did not show it to him. Witness received several of the papers from Washington through the mail, and knew of several other parties in Fort Worth who likewise received copies of the paper containing the said article.

The State then introduced "The Grand Army Journal" in evidence, and read the article to the jury, just as it appears in the information.

The question involved in the opinion were among those raised by the motion for new trial.

*Furman, Stedman & Capps,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. There can be no question as to the fact that the newspaper publication, which is the subject matter of the charge laid in the indictment, is libelous *per se,* and, in our opinion, the indictment is amply sufficient to charge the offense of libel.

We are further of opinion that the evidence fully establishes the fact that defendant circulated the libel with malicious design, by reading and exhibiting it to others (Penal Code, Art. 621), and that he did so with intent to injure the reputation of Burchill, the libeled party. (Penal Code, Art. 616.)

We find no error in the proceedings and judgment of conviction in this case for which the judgment should be reversed, and it is therefore affirmed.

⸱⸱ *Affirmed.*

Opinion delivered May 17, 1884.